___

**SO ORDERED,**



*Judge Jason D. Woodard*

United States Bankruptcy Judge

The Order of the Court is set forth below. The case docket reflects the date entered.
___

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | | | |
|---|---|---|---|
| In re: | ) | | |
| | ) | | |
| DARRELL L. SMITH, | ) | Case No.: | 20-10507-JDW |
| | ) | | |
| Debtor. | ) | Chapter | 13 |
| | ) | | |

## MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR RELIEF FROM AUTOMATIC STAY AND FOR OTHER RELIEF (DKT. # 13)

This matter is before the Court on the *Motion for Relief from Automatic Stay and for Other Relief* (Dkt. # 13) filed by the creditor HSBC Bank USA, National Association, as Indenture Trustee for People's Choice Home Loan Securities Trust Series 2005-2 and the *Response to Motion to Lift Automatic Stay* (Dkt. # 18) filed by the debtor Darrell L. Smith.  A hearing was held on June 16, 2020, where the parties argued to the Court and agreed to a briefing schedule.

1

The question is at what moment does a real property foreclosure sale become final under Mississippi law, or more specifically, at what point does the debtor lose both legal and equitable title to the property? The Court has reviewed the arguments and relevant law and finds and concludes that after legal title is divested upon default, a real property foreclosure sale is final as to the debtor's equitable right of redemption once the public auction sale concludes, not when a deed is delivered or recorded. Accordingly, the motion is due to be granted.

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334, and the *United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 6, 1984. This is a core proceeding as set forth in 28 U.S.C. § 157(b)(2)(A), (B), (G), and (O).

## II. FACTS AND RELEVANT PROCEDURAL HISTORY[1]

The debtor initiated this bankruptcy proceeding by filing a chapter 13 voluntary petition on February 4, 2020 at 11:28 a.m. (Dkt. # 1). He listed the creditor as a secured creditor in his bankruptcy schedules and listed the real property as collateral securing the claim. (Dkt. # 6). The creditor then filed

---

[1] To the extent any of the findings of fact are considered conclusions of law, they are adopted as such, and vice versa.

2

this motion to lift the automatic stay asserting that a foreclosure sale had concluded on February 4, 2020, prior to the debtor filing his bankruptcy petition, and that the debtor therefore had no interest in the property. (Dkt. # 13). The debtor argued that the bankruptcy petition was filed prior to the conclusion of the foreclosure sale and the automatic stay prohibited the transfer of title. (Dkt. # 18).

At the hearing on the motion, the foreclosure auctioneer, Pam Reel, testified that she commenced the sale on February 4 at 11:05 a.m., and that the sale took approximately two to three minutes to complete. She testified that the creditor was the highest bidder with a bid of $151,500.00 and that there were no other bidders at the sale.[2] She further testified that after the gavel fell she signed a memorandum of sale. The Court finds Ms. Reel's testimony credible as to these facts. The Court further finds that the gavel fell and the memorandum of sale was signed before the bankruptcy petition was filed at 11:28 a.m.

The substituted trustee's deed was delivered no earlier than the next day, February 5, when it was signed by the trustee. (Dkt. # 36, Ex. B). The deed was recorded in DeSoto County Court records on February 12. (Dkt. # 36, Ex. C).

---

[2] Ms. Reel made the bid as the agent of the creditor.

Timeline of Events:



## III. CONCLUSIONS OF LAW

The commencement of a bankruptcy case creates an estate that is comprised of all legal or equitable interests of a debtor in property held as of the commencement of the case.[4] "Although bankruptcy law creates the estate, non-bankruptcy law determines which assets of the debtor become part of the estate."[5] "[W]hatever rights a debtor has in property at the commencement of the case continue in bankruptcy–no more, no less."[6] "Property interests are

---

[3] Although no proof of default was offered into evidence, the creditor alleged that the debtor defaulted on the loan on November 1, 2018. (Dkt. # 38). The debtor admitted in his briefs that he became delinquent on his mortgage prior to the creditor engaging a law firm to handle the foreclosure. (Dkt. ## 36, 40).
[4] 11 U.S.C. § 541(a)(1).
[5] *In re Martin*, 276 B.R. 552, 555 (Bankr. N.D. Miss. 2001) (citing *In re Pinetree, Ltd.*, 876 F.2d 34, 36 (5th Cir. 1989)).
[6] *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984).

4

created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."[7] Accordingly, the Court looks to Mississippi state law to determine whether the debtor had a legal or equitable interest in the property at the time the bankruptcy case was commenced.[8] If so, that interest is property of the bankruptcy estate and the foreclosure sale may be set aside. If not, neither the estate nor the debtor have any interest in the property.

The debtor argues that the foreclosure sale was not complete until the property was conveyed to the creditor when the deed was signed and delivered, which occurred after the bankruptcy petition was filed. MISS. CODE ANN. § 89–1–3 provides that "lands shall not be conveyed from one to another unless the conveyance be declared by writing signed and delivered." "For a deed to be valid in Mississippi, the grantor must deliver it to the grantee."[9] The debtor argues that the foreclosure sale was not complete until February 5 when the substituted trustee's deed was signed.

---

[7] *Butner v. United States*, 440 U.S. 48, 55 (1979).
[8] This Court would certify this state law question to the Mississippi Supreme Court, but Rule 20(a) of the Mississippi Rules of Appellate Procedure provides that only the United States Supreme Court or a United States Court of Appeals may so certify. M.R.A.P. 20(a). Absent a clear directive from the Mississippi Supreme Court, this Court is tasked with making a "tenable forecast" of what the Mississippi Supreme Court would do if faced with the question. *Stevens v. Pike Cty. Bank*, 829 F.2d 693, 696 (8th Cir. 1987) (Arnold, J., concurring).
[9] *In re Smith*, 495 B.R. 291, 298 (Bankr. N.D. Miss. 2013) (citing MISS. CODE ANN. §§ 89-1-1 and 89-1-3; *Estate of Dykes v. Estate of Williams*, 864 So. 2d 926, 930 (Miss. 2003)).

In a traditional sale of land where "A" conveys its interest in real property to "B," the sale transaction would not be complete (i.e., the transaction of conveying the property would not be complete) until the deed was signed and delivered. Foreclosure law is different and the debtor's focus on the deed is inapposite. The question is not when did the creditor (as the highest bidder) take title to the property, but rather when did the debtor lose his rights in the property.

The Court concludes that in Mississippi, a mortgagor loses his rights in real property in two steps. First, a mortgagor is divested of legal title when a default occurs. A mortgagor then loses the equitable right of redemption when a public auction foreclosure sale concludes.

### A. Legal Title

States adopt one of three theories (title theory, lien theory, or intermediate theory) to determine the respective legal interests of parties to a mortgage or deed of trust.[10] "Under the 'title' theory, the mortgagee or the trustee is considered to hold actual title to the real property until the underlying debt is paid."[11] "Under the 'lien' theory, the mortgagor or borrower retains title to the property subject to the lien of the mortgage or deed of trust,

---

[10] *Martin*, 276 B.R. at 555.
[11] *Id.*

6

which must be executed upon or foreclosed after default."[12] The intermediate theory is a hybrid of title and lien theory, and "provides that a lien is created against the real property by the mortgage or deed of trust, and that title to the real property transfers to the mortgagee or trustee upon default."[13] "In effect, a state adhering to the intermediate theory is a lien theory state up until the time of default and is a title theory state once default occurs."[14]

Mississippi is an intermediate theory state.[15] "Section 89-1-43 provides that, prior to a sale under a deed of trust, the grantor 'shall be deemed the owner of the legal title' except as against the trustee after breach of the condition of the deed of trust."[16] Upon maturity of a debt and a failure to pay, legal title shifts from the mortgagor.[17] If the mortgagor breaches a condition of the mortgage or deed of trust, such as defaulting on the loan, legal title to the real property transfers to the mortgagee or trustee "for the protection of his debt, and to make the security available for its payment."[18] "Since the mortgagee's rights arise with default, it has been held that even if a mortgagee

---

[12] *Id.*
[13] *Id.*
[14] *Id.* at 555-556.
[15] MISS. CODE ANN. § 89–1–43; *Martin*, 276 B.R. at 555–556.
[16] *Hinton v. Rolison*, 175 So. 3d 1281, 1284 (Miss. 2015).
[17] *Elder v. Jones*, 64 So. 212, 213 (Miss. 1914).
[18] *Martin*, 276 B.R. at 555–556 (quoting *Anderson v. Kimbrough*, 741 So. 2d 1041, 1047–1048 (Miss. Ct. App. 1999)).

7

is holding under an improper foreclosure, it is still entitled because of this statute to possession and the income until the debt is paid."[19]

Because Mississippi is an intermediate theory state, legal title shifts to the mortgagee or trustee once a borrower defaults on the loan. Here, the debtor admitted that he defaulted on the mortgage prior to the foreclosure sale and the filing of the bankruptcy petition.[20] Accordingly, the debtor was divested of legal title to the property several months prior to the commencement of the bankruptcy case.

### B. Redemption Rights

#### 1. *Mississippi State Law Redemption*

Even though legal title shifted upon default, that title was held subject to the debtor's right to redeem the property prior to a foreclosure sale.[21]

MISS. CODE ANN. § 89-1-59 provides that:

> [w]here a series of notes or installment payments secured by a deed of trust, mortgage, or other lien, and a provision is inserted in such instrument to secure them to the effect that upon a failure to pay any one (1) note or installment, or the interest thereon, or any part thereof, or for failure to pay taxes or insurance premiums on the property described in such instrument and the subject of such lien, that all the debt secured thereby should become due and collectible, and for any such reason the entire indebtedness shall have been put in default or declared due, the debtor, or any interested party, may *at any time before a sale* be made under the

---

[19] *Anderson*, 741 So. 2d at 1047-1048 (citing *James v. Jackson Production Credit Ass'n*, 389 So. 2d 494, 496-497 (Miss. 1980)).
[20] Dkt. ## 36, 40.
[21] *See* MISS. CODE ANN. § 89-1-59; *See also Buck v. Payne*, 52 Miss. 271, 280 (1976).

Case 20-10507-JDW Doc 41 Filed 08/12/20 Entered 08/12/20 15:57:20 Desc Main
Document   Page 9 of 19

terms and provisions of such instrument, or by virtue of such lien, stop a threatened sale under the powers contained in such instrument or stop any proceeding in any court to enforce such lien by paying the amount of the note or installment then due or past due by its terms, with all accrued costs, attorneys' fees and trustees' fees on the amount actually past due by the terms of such instrument or lien, rather than the amount accelerated, and such taxes or insurance premiums due and not paid, with proper interest thereon, if such should have been paid by any interested party to such instrument. Any such payment or payments shall reinstate, according to the terms of such instrument, the amount so accelerated, the same as if such amount not due by its terms had not been accelerated or put in default (emphasis added).

"In effect, a debtor may stop a foreclosure sale, before it becomes final, by bringing the debt current."[22] But "the debtor loses the right to 'decelerate' the debt once the foreclosure sale has occurred."[23] "Mississippi law does not provide a right of redemption after [the foreclosure sale has concluded]."[24] The Mississippi Supreme Court has held that "Mississippi law protects a borrower's right to reinstate his or her loan *up until the moment a foreclosure sale is made.*"[25] The Mississippi Supreme Court has also held that "in order to obtain reinstatement of the obligation and avoid foreclosure, the obligor must *before the sale* pay all sums due…."[26] "At the moment a foreclosure sale

---

[22] *Martin*, 276 B.R. at 555.
[23] *Id.*
[24] *In re Applewhite*, 106 B.R. 468, 469 (Bankr. S.D. Miss. 1989).
[25] *Chase Home Fin., L.L.C. v. Hobson*, 81 So. 3d 1097, 1100-1101 (Miss. 2012) (emphasis added).
[26] *Hopson v. Chase Home Fin., LLC*, 179 So. 3d 1026, 1033 (Miss. 2015) (emphasis added).

9

concludes, the debtor is fully divested of all legal and equitable interest in the foreclosed property."[27]

This leads to the ultimate question here. Was the foreclosure sale complete when the auctioneer declared a winner on the courthouse steps and/or signed the memorandum of sale (both prior to the bankruptcy filing)? Or was the foreclosure sale complete when the substituted trustee's deed was signed and delivered to the winning bidder (here, after the bankruptcy case was filed)? Or was it even later, when the deed was recorded?

In MISS. CODE ANN. § 89-1-55,[28] which describes the procedure for conducting a nonjudicial foreclosure under power of sale, the term "sale" means a sale at public auction. In § 89-1-59, which describes the method of reinstating accelerated debt, the term "sale" is also used. The term "sale" is not separately

---

[27] *Applewhite*, 106 B.R. at 469.
[28] MISS. CODE ANN. § 89-1-55. Land Sold Under Mortgage:
   All lands sold at public outcry under deeds of trust . . . shall be sold in the county in which the land is located, or in the county of the residence of the grantor, or one of the grantors in the trust deed, provided that where the land is situated in two (2) or more counties, the parties may contract for a sale of the whole in any of the counties in which any part of the land lies. *Sale* of said lands shall be advertised for three (3) consecutive weeks preceding such sale, in a newspaper published in the county, or, if none is so published, in some paper having a general circulation therein, and by posting one notice at the courthouse of the county where the land is situated, for said time, and such notice and advertisement shall disclose the name of the original mortgagor or mortgagors in said deed of trust or other contract. No *sale* of lands under a deed of trust or mortgage, shall be valid unless such *sale* shall have been advertised as herein provided for, regardless of any contract to the contrary. An error in the mode of sale such as makes the sale void will not be cured by any statute of limitations, except as to the ten-year statute of adverse possession (emphasis added).

10

defined under the Mississippi Code. Applying the presumption of consistent usage, the term "sale" in both code sections refers to a sale at public auction.[29] Accordingly, § 89-1-59 permits a debtor to cure at any time before a sale is made *at public auction*. The sale of the property at the foreclosure auction—thereby concluding the foreclosure sale process—and delivery of the deed conveying legal title from the trustee to the foreclosure sale purchaser are two distinct events. "The rule in the vast majority of jurisdictions," which Mississippi adheres to, "is that on entering into a contract for the purchase and sale of land, the purchaser is the owner in equity of the land, and the seller holds legal title as security for payment of the purchase price."[30]

> [Although] a deed is ordinarily required to convey strict legal title… the [purchaser's] interest under the contract becomes realty; in case of his death before the conveyance is made the title descends to his heirs; he is entitled to all benefits attaching to the property, and must bear all losses, unless the contract shows a contrary intention on the part of the parties; he may execute a valid mortgage or deed of the property; and is entitled to the usual benefits attaching to the ownership of the property, subject,

---

[29] *Utility Air Regulatory Group v. E.P.A.*, 573 U.S. 302, 319 (2014) ("One ordinarily assumes that identical words used in different parts of the same act are intended to have the same meaning") (quoting *Environmental Defense v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007)); *Robers v. United States*, 572 U.S. 639, 643 (2014) ("Generally, identical words used in different parts of same statute are presumed to have the same meaning") (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 86 (2006)); *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519, 536 (2013) ("[Courts] normally presume that words… carry the same meaning when they appear in different but related sections").
[30] 17 WILLISTON ON CONTRACTS § 50:42 (4th ed.); *see, e.g., Funderburk v. City of Columbus*, 78 So. 1, 1–2 (Miss. 1918) (finding that because the plaintiff bargained for and paid for property, but had no deed of conveyance from the former owner, "plaintiff had the equitable title to the property, but did not possess the legal title thereto").

11

however, to the rights of the vendor, who holds the legal title as security for the payment of the purchase money.[31]

Under Mississippi law, a valid foreclosure sale cuts off the borrower's rights of redemption and any other rights in and to the property.[32] The relevant Mississippi statutes support the conclusion that the term "foreclosure sale" is meant to mean sale at public auction. The auctioneer concluded the auction at approximately 11:08 a.m.–before the bankruptcy petition was filed at 11:28 a.m.

Although some courts in other jurisdictions adhere to the so-called "gavel rule," holding that the sale is made and the foreclosure sale process concludes when the gavel falls at the foreclosure auction, the Court need not establish such a bright line rule here. An argument can be made that the statute of frauds requires some writing. The memorandum of sale satisfies any writing requirement in this case.

This theory was adopted with persuasive reasoning in *In re Bardell*.[33] In that case, the debtor filed a Chapter 13 petition two days after the foreclosure sale, where the purchaser posted a ten percent deposit and executed the trustee's memorandum of sale, but before the foreclosure sale deed was

---

[31] 17 WILLISTON ON CONTRACTS § 50:42 (4th ed.).
[32] *Peoples Bank & Tr. Co. v. L & T Developers*, 434 So. 2d 699, 708 (Miss. 1983).
[33] 374 B.R. 588, 591–594. (N.D. W. Va. 2001) (holding that West Virginia law provides no right to redeem property after a foreclosure sale and that the auctioneer's acceptance of the highest bid and execution of a memorandum of sale completes the sale and ends a debtor's right to cure the arrearage).

recorded.[34] The *Bardell* court held that "[a] contract of sale between a trustee in a deed of trust and a purchaser is complete when the trustee, selling at auction, knocks the land down to the bidder, makes a memorandum of the sale and its terms, and signs the same."[35] The court reasoned that "the existence of the memorandum of sale d[oes] not confer legal title on the purchaser, but rather confer[s] the right to call for the legal title and to enforce specific performance of the contract of sale."[36] "In other words, after the property is knocked down by the auctioneer and a memorandum of sale is executed, the equitable title to the property passes to the purchaser."[37]

In Mississippi, a contract "or some memorandum" for the sale of land must be "in writing, and signed by the party to be charged therewith . . . ."[38] *Mississippi Real Estate Foreclosure Law* notes that "a mortgagee can purchase property at the foreclosure sale under Mississippi law.[39] However "... the trustee is the agent for both parties to the deed of trust and occupies a fiduciary relationship as to both."[40] It is further recommended that "[i]n the event the mortgagee is not present, [the trustee should] accept [mortgagee's] bid as

---

[34] *Id.* at 590.
[35] *Id.* at 591–592 (quoting *Atkinson v. Washington & Jefferson College*, 46 S.E. 253 (W. Va. 1903)).
[36] *Id.*
[37] *Id.*
[38] MISS. CODE ANN. § 15-3-1.
[39] K.F. Boackle, *Mississippi Real Estate Foreclosure Law* § 4–8, at 43 (2d ed. 2002); see also *Lake Hillsdale Estates, Inc. v. Galloway*, 473 So. 2d 461, 465 (Miss. 1985).
[40] *Id.*

13

specified in his instructions as the opening bid...."[41] "The mortgagee need not actually tender cash but may credit the note for the amount of the bid."[42] The Mississippi Supreme Court explained in *Wansley v. First Nat. Bank of Vicksburg* that "[t]he trustee of a trust deed is not a trustee in the strict sense of the word," but rather his role "is more nearly that of a common agent of the parties to the instrument."[43] These memorandums by auctioneers are sufficient under the statute of frauds:

> The auctioneer acts as the agent of both the vendor and vendee; of the former from the inception of the bidding, of the latter only from the coming down of the hammer and the acceptance of his bid. From the acceptance of the bid the auctioneer becomes the agent of the bidder, so far as to bind him by putting down his name opposite to the article sold on the auction list; and this may be done either by the auctioneer or by the person acting as his clerk, provided it is done at the time of sale. A delay only of a few hours has been in some cases held fatal. It is necessary, however, especially in cases of realty, that this memorandum should be made in some book, catalogue, advertisement, or paper of some sort containing the subject-matter and terms of sale, or so definitely referring to such a paper as to make it a part of it, either by the physical contact or by the reference. When the memorandum is made by the auctioneer, or his clerk, there is such a signing as complies with the statute of frauds.[44]

This holding is also consistent with holdings in states with similar redemption rights as Mississippi. For instance, Georgia also has no right of

---

[41] Boackle, § 4–9, at 44.
[42] *Id.*
[43] 566 So. 2d 1218, 1223 (Miss.1990).
[44] *Jelks v. Barrett*, 52 Miss. 315, 322-323 (1876).

redemption after a foreclosure sale takes place and the highest bid is accepted, which is evidenced by a memorandum of foreclosure sale.[45] The United States Bankruptcy Court for the Northern District of Georgia found that "while a debtor's equitable right of redemption may constitute property of the debtor's bankruptcy estate, state law controls the issue of whether a foreclosure sale has proceeded far enough to terminate that right of redemption."[46] The Georgia bankruptcy court found that the debtor's rights in the property terminated under Georgia law at the conclusion of the foreclosure sale and the acceptance of the highest bid, and that the property thereafter ceased to be property of the bankruptcy estate.[47] As a result, the court declined to impose a stay to preclude the creditor from executing or recording the deed to transfer title.[48]

Similarly, the United States Bankruptcy Appellate Panel for the First Circuit found that the bankruptcy court erred in denying a creditor's motion for relief, when the creditor conducted a foreclosure sale and a memorandum of sale was signed the day before the bankruptcy petition was filed, but before the deed was recorded.[49] The BAP found that under New Hampshire law "a mortgagor does not have a right of redemption after the gavel has fallen and

---

[45] *See Carrington v. Citizens' Bank of Waynesboro*, 144 Ga. 52, 85 S.E. 1027 (1915).
[46] *In re Cook*, 614 B.R. 635, 644 (Bankr. N.D. GA. 2020).
[47] *Id.* at 646-647.
[48] *Id.*
[49] *In re LaPointe*, 505 B.R. 589, 591 (B.A.P. 1st Cir. 2014) (applying New Hampshire law).

the memorandum of sale is signed."[50] In *LaPointe*, the BAP found that because the foreclosure auction concluded prior to the petition date, the debtor no longer had any right of redemption and no legal or equitable interest in the property under New Hampshire law.[51] These holdings are consistent with holdings in other states where no redemption rights exist after a foreclosure sale.[52]

Here, the auctioneer began the public auction foreclosure sale at 11:05 a.m. the morning of February 4, declared a winner approximately two to three minutes later, and immediately signed the memorandum of sale. All of this

---

[50] *Id.* at 597.

[51] *Id.*

[52] *In re Taffe*, No. A13-00199-GS, 2013 WL 3760148 (Bankr. D. Alaska July 15, 2013) (holding that the foreclosure sale, which occurred prior to the bankruptcy filing but before execution and delivery of the trustee's deed, terminated the debtors' interest in the property under Alaska law, where no right of redemption exists after a nonjudicial foreclosure sale); *In re Sands,* 328 B.R. 614 (Bankr. N.D.N.Y. 2005) (holding that under New York law a debtor's right of redemption and interest in a property extinguishes by a foreclosure auction, not by the subsequent delivery of the deed, and that no stay should be imposed when the bankruptcy petition filing was not completed until after the sale had taken place, even though bankruptcy counsel had begun the filing process 11 minutes before the foreclosure sale began); *In re Kealia Beach Vill., Inc.*, 18 B.R. 133 (Bankr. D. Haw. 1982) (holding that there is no right under Hawaii law to redeem property sold under foreclosure proceedings and that the automatic stay should not operate to prevent the confirmation of the pre-petition sale, which divested the debtor of all right, title, and interest in the property); *In re Hall*, 188 B.R. 476 (Bankr. D. Mass. 1995) (holding that the debtor's property did not constitute property of the bankruptcy estate because under Massachusetts law, although a mortgagor who is in breach of a condition of a mortgage may redeem his or her land by tendering payment to the mortgagee prior to a foreclosure sale, that right of redemption terminates once the property has been foreclosed pursuant to a mortgagee's power of sale once a memorandum of sale has been executed); *In re Grant*, 303 B.R. 205 (Bankr. D. Nev. 2003) (holding that under Nevada law, a debtor's legal and equitable interest in property is effectively terminated upon the foreclosure sale, and not upon recordation of the trustee's deed, and that post-petition recordation of the deed, therefore, does not violate the automatic stay).

16

occurred prior to the bankruptcy petition being filed at 11:28 a.m. The delivery and recording of the deed, which occurred post-petition, served to memorialize conveyance of the property. But it is immaterial when the trustee conveyed legal title to the foreclosure sale purchaser, because the debtor had already lost legal title at the time of default. In *Applewhite*, the court concluded:

> [I]t does not matter whether or not the Substituted Trustee's Deed was actually delivered to the successful bidder at the foreclosure sale. Since the debtor was divested of her legal and equitable interest in the property at the conclusion of the sale, the property does not become part of the debtor's [bankruptcy] estate . . . .[53]

After default, the debtor retained only an equitable right of redemption. The conclusion of the public auction sale–at the very latest upon the signing of the memorandum of sale–extinguished the debtor's right of redemption under state law, which happened before the bankruptcy case was filed.

### 2. *Bankruptcy Code Redemption*

Pursuant to 11 U.S.C. § 1322(c)(1) a debtor may cure a default on the debtor's principal residence "until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankrupty law." Thus, redemption can occur through the bankruptcy process. "If a petition is filed while the redemption right is unexpired, the equitable right of redemption becomes part of the bankruptcy estate."[54] But, if a valid foreclosure sale in

---

[53] *Applewhite*, 106 B.R. at 469–470.
[54] *In re Isom*, 342 ␣B.R. 743, 745 (Bankr. N.D. Miss. 2006).

17

accordance with state law takes place before a bankruptcy petition is filed, the debtor no longer has any legal or equitable interest in the property and as a result the property does not become part of the bankruptcy estate.[55]

Under Mississippi law, a debt can be de-accelerated by paying the entire arrearage at any time before a sale is made.[56] If a bankruptcy petition is filed before the redemption right has been extinguished, then the debtor can pay that arrearage over the life of the bankruptcy plan.[57] But the bankruptcy process does not revive a right of redemption that has already been lost. Here, the debtor had lost all rights in the property before the bankruptcy petition was filed and the Bankruptcy Code provides no relief.[58]

## IV. CONCLUSION

Losing all rights in real property under Mississippi law is a two-step process: (1) the mortgagor is divested of legal title when a default occurs, then (2) is divested of redemption rights upon the conclusion of the public auction foreclosure sale.[59]

---

[55] 11 U.S.C. § 541(a)(1); *United States v. Bishop*, 262 B.R. 401, 405 (W.D. Tex. 2000).
[56] MISS. CODE ANN. § 89-1-59.
[57] 11 U.S.C. § 1322(c)(1).
[58] A foreclosure sale is not a surprise. Pursuant to MISS. CODE ANN. § 89-1-55, a foreclosure sale must be advertised for several weeks before it takes place for the sale to be valid. A debtor can avoid losing redemption rights by filing a bankruptcy petition at any point prior to the public auction sale. The debtor knew the foreclosure sale date for almost a month and waited until the day of the sale to file his bankruptcy petition.
[59] Pursuant to MISS. CODE ANN. § 27-45-3, a two-year redemption period exists from the day of a tax sale. That redemption period has no application to redemption rights under a foreclosure sale.

The debtor was divested of legal title once he defaulted on the loan, which he admitted occurred prior to the foreclosure sale auction and the filing of the bankruptcy petition. He lost the equitable right of redemption once the public auction sale concluded when the gavel fell and the memorandum of sale was signed.[60] All of this occurred approximately twenty minutes before the bankruptcy petition was filed. Thus, the debtor had no legal or equitable interest in the property at the time the bankruptcy case commenced. Because the debtor held no legal or equitable interest in the property at the commencement of the case, the property is not property of the estate, but to the extent necessary to allow for eviction proceedings, stay relief is due to be granted. Accordingly, it is hereby

**ORDERED, ADJUDGED,** and **DECREED** that the motion (Dkt. # 13) is **GRANTED** to the extent necessary to record documents and commence eviction proceedings. No money judgment may be sought in any other court. Should the creditor claim a deficiency, it may file a proof of claim in this Court.

---

[60] The Court leaves for another day what the result would be if the bankruptcy petition was filed between the gavel falling and a memorandum of sale being signed.